MITCHAEL J. DICKSON et al. *vs.* JOSHUA GREEN, JR.

All contracts for the sale of land must be in writing, an'd signed by the party or his agent lawfully authorized.

The want of a written contract might be a good defence in a controversy between D. and C.; but how far it will avail against the purchasers, depends upon what he (D.) said at the time to induce them to trust to the representations and the bond of C.

Where a party induces another to part with his money, he will be estopped in equity from asserting a title to property purchased by an innocent vendee.

It is the settled doctrine, that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of the title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person.

The statute of frauds is no defence against the claimant in a case like the present. *Held*, that the heirs of D. are precluded from making any defence which he could not make.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The bill shows that Caldwell and Dickson made a verbal contract for the sale of the lot in controversy to Finucane and Barnes; that Caldwell afterwards, being thereto authorized, reduced the contract to writing, and signed and delivered it to the purchasers, who executed their notes; that it was then understood and agreed that Dickson should sign the writing; that Dickson was then, and up to the time of his death, ready

and willing to sign, and would have done so, but was prevented by his death before he had an opportunity, his name being mentioned in the body of the contract; that shortly after the contract, Dickson sold his interest in the proceeds of the sale to Caldwell, and indorsed to Caldwell the two notes given by Finucane and Barnes, and thereafter frequently said that he had no interest in the lot; that he had sold out to Caldwell before the purchase of Finucane and Barnes, and had been paid.

Under these circumstances, a specific performance of the contract of sale was sought by the complainant, who claimed by purchase from Finucane and Barnes.

The answer denied generally the allegations of the bill, (which are deemed material,) and relies on the statute of frauds and perjuries.

A decree was rendered for complainant, from which the defendants appealed.

*D. Mayes,* for appellants.

Nothing is more uniformly held, than that in equity (as at law) the complainant cannot succeed by proof of an equity, no matter how clear and conclusive that proof may be, unless it is the equity relied on in his bill. He cannot file a bill to enforce upon the heirs of Dickson the specific execution of a contract of their ancestor, and obtain a decree, on proof that their ancestor made no contract, but was guilty of fraud. *Pratt* v. *Vattier,* 9 Peters, R. 405; *Langdon* v. *Goddard,* 2 Story, R. 267; *Cowan* v. *Price,* 1 Bibb, 173; *Taylor* v. *Luther,* 2 Sumner, 229; *Athey* v. *McHenry,* 6 B. Mon. 50; *Cohen* v. *Duboise,* Harp. Equity R. 102.

So far does this doctrine extend, that, in the case of *Beach* v. *Fulton Bank,* 3 Wend. 573, where usury was set up in the answer, and the facts and circumstances constituting it specially set forth, it was held, that the party could not be relieved on proof of usury differing in circumstances and facts from those set up in the answer.

Whenever a case of fraud is made by the bill, parol evidence will be admitted, for the purpose of establishing that case; but

52 *

the facts for which relief is prayed on the score of fraud, must be plainly, fully, and distinctly alleged, and the proof strong and irrefragable. *Miller* v. *Cotter*, 5 Geo. R. 341.

" Confessions of a party are competent, but should be received with great caution." *Logan* v. *Mc Chord, &c.*, 2 A. K. Marsh. 225.

" Proof of admissions made by a deceased vendor, at a remote period, should be received with caution, especially when it is sought, by such admissions, to take the case out of the operation of a statute." *Hood* v. *Bowman*, Freeman, Ch. R. 290.

" This species of evidence is in itself the weakest and most unsatisfactory of all testimony, on account of the facility with which it may be fabricated, and the utter impracticability of disproving it by direct negative proof." *Snelling* v. *Utterback*, 1 Bibb, 611.

*F. Anderson* filed a brief on the same side.

*D. Shelton*, for appellee, filed no brief in the papers.

Mr. Justice Fisher delivered the opinion of the court.

The appellee filed his bill in the superior court of chancery against the heirs at law of James C. Dickson, deceased, enjoining them from enforcing a certain judgment in ejectment which they had recovered in the circuit court of Hinds county against the appellee and others, for an undivided moiety of lot No. 2, in square No. —, in the city of Jackson.

The heirs of Isaac Caldwell, deceased, are also made parties defendants to the bill, but there is no controversy as to the relief sought against them; and the questions at issue between appellee and Dickson's heirs will only be considered.

The facts presented by the pleadings and proofs are briefly these: In January, 1835, Isaac Caldwell and James C. Dickson, being joint owners of the lot in controversy, the former made a sale of the same to Finucane and Barnes for the sum of $2,100, and took their notes for the purchase-money, payable to Caldwell and Dickson in one and two years from date. He at the same time executed a title bond, containing covenants

that he and Dickson would, upon the payment of the last instalment, convey a good title to said purchasers. This bond was signed only by Caldwell, though the name of Dickson was in the body thereof, and was evidently intended, at least by the draftsman, to be signed jointly with Caldwell's to the bond.

At the time Caldwell executed the bond, he was asked whether the signature of Dickson thereto was necessary, to which he answered in the negative; and the witness Finucane, who was also one of the purchasers, says that he "gave himself no further trouble about it," as Caldwell is proved to have been a member of the legal profession, and must have known the legal effect of the covenants in his bond for title; he had sold the whole lot. His covenants could only be discharged by conveying a good title to the purchasers, which of course could not be done without conveying in some manner Dickson's interest as well as his own. There were but two ways in which this could be done; by Dickson's either conveying directly to the purchasers, or vesting his interest in Caldwell, who had covenanted to convey at least the title of both.

The case may, therefore, be considered, first, whether Dickson, in any manner recognized by the law, covenanted to convey directly to the purchasers his interest in the lot; second, whether he conveyed, or agreed to convey, to his co-tenant Caldwell; and third, whether he induced the purchasers, or either of them, to believe, before the payment of the purchase-money, that he had sold his interest to Caldwell, which would enable him to perform his covenant to convey the entire lot.

As to the first proposition, there is, perhaps, no testimony, except the circumstances of Dickson's transferring his interest in the notes of Finucane and Barnes to Caldwell, showing that he, Dickson, ratified the sale of his co-tenant. This would unquestionably be sufficient to bind him, but for the stern provision of the statute, which requires all contracts for the sale of land to be in writing, and signed by the party or his agent thereunto lawfully authorized. Upon this part of the case, it is contended by the counsel for the appellee, that the name of Dickson appearing in the body of the bond, and he taking the full benefit of the contract, he thereby so far ratified the

acts of Caldwell, as to make the mere insertion of the name in the body of the bond, a sufficient signing within the meaning and spirit of the statute. It is unnecessary to examine what would be a correct rule of law, applicable to this state of facts; as it clearly appears, that Dickson was not to sign the bond, and that his name was not written therein by Caldwell, but by another person, who is not shown to have been his agent for any purpose. It is probable, however, from all the circumstances, that the attorney who wrote the bond was employed by the purchasers, and wrote it to conform to the state of facts which they supposed existed, to wit: that Caldwell and Dickson were jointly interested in the lot, and that both should execute the bond for title.

The case is equally barren of testimony which will relieve it from the operation of the statute, when considered in reference to the second proposition. The sale by Dickson to Caldwell, when confined exclusively to these parties, whether a different rule of equity would be held as to third parties, must depend upon the peculiar circumstances of the case. The want of a written contract might be a good defence for Dickson against Caldwell in a controversy between them. But how far it would avail him against the purchasers, must depend upon what he said and did to induce them to trust to the representations and bond of Caldwell.

And this brings us to consider the third point: Whether he induced the purchasers to believe that he had sold his interest in the lot to Caldwell. It must be borne in mind, that they were to pay so much money for the entire lot. They did not contract for an undivided moiety, but for the whole lot, and gave their notes payable to Caldwell and Dickson for the title which both had, or might acquire. Dickson, by transferring his interest in the notes to Caldwell, enabled his representatives to collect the full amount thereof, and at the same time admitted that he approved of the sale. Caldwell, at the time the notes were executed, informed the purchasers that the signature of Dickson to the bond was unnecessary. Why was it unnecessary? The whole lot had been sold, and Dickson's title must in some manner pass to Finucane and Barnes before the cove-

Dickson et al. *v.* Green.

nants in the bond could be satisfied. We can only account for this declaration of Caldwell, by the evidence which Dickson himself has furnished, that he had sold his interest to Caldwell, and had received pay therefor, as shown by the depositions of Finucane and Hobbs. From all the circumstances of the transaction, we must infer that Caldwell, at the time of closing the trade, believed that Dickson's interest in the lot had been placed completely under his control; otherwise he would not have made the declaration, that Dickson's signature to the bond was unnecessary, or allowed him to be jointly interested in the notes. If he really owned Dickson's interest, then the declaration was true as a legal proposition; because he could, by his own deed with a covenant of general warranty, perform the condition of his bond. It is equally clear, that Dickson believed that his interest in the lot had passed to Caldwell, not only from the fact of his taking an equal benefit with Caldwell under the contract, but from his positive assertion to that effect to one of the purchasers, and to other persons. Take his and Caldwell's declarations together, and they will be found not only to harmonize, but to make the same impression on the minds of the purchasers. Caldwell stated that the bond was sufficient without Dickson's signature. This was equivalent to saying that the title of both was in him, which he would be able at the proper time to convey according to his bond. Dickson, when conversed with, confirms this statement, as well as the impression which it was calculated to make on the mind, by an express declaration, that he had sold his interest to Caldwell.

If the purchasers were disposed to trust at all to declarations, and complete their contract upon the faith of them, it is difficult to see how they could hesitate in this transaction. The statements of Caldwell and Dickson were made at different times; and while it is true, the same language was not used by both, yet the same idea was necessarily conveyed. If there was any thing obscure or unintelligible in Caldwell's statement, it was certainly made plain and intelligible by Dickson's declaration. The conclusion forces itself upon the mind, that from the conduct and statements of both parties, Finucane and Barnes

were induced to believe that, upon payment of the purchase-money, they would receive a good title to the whole lot. Dickson, having thus induced the purchasers to part with their money, would be in equity estopped to assert a title to any part of the property inconsistent with his own declaration. It is immaterial what defence he might have against the person to whom he alleged he had sold; he not only disclaimed all title at a time and to persons, when and to whom equity would not allow him to be silent, but represented the title to be in the very person who had covenanted to convey it to the purchasers. Under this state of facts the case falls fairly within the rule laid down by Chancellor Kent. He says, " there is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that, if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of the title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. R. 353. In the case at bar, the party was not passive. He was one of the payees of the notes, took an equal benefit with Caldwell in the same, and, as a man of fairness, must be supposed to have furnished an equal part of the consideration. This, then, conveyed to him a knowledge of what had been done in his name. He uttered not a word of disapprobation; but on the contrary, in substance, said that Caldwell had only exercised the rights of an entire owner in making the sale.

The statute of frauds, while it might have availed in a controversy between Dickson and Caldwell, is no defence against the complainant below, who claims under Finucane and Barnes, and is entitled to their equities in the present proceedings.

The appellants, who are the heirs of James C. Dickson, and are concluded by any defence which would conclude him, are perpetually enjoined from enforcing their judgment in ejectment against the interest of the complainant in said lot. The decree of the chancellor must, therefore, be affirmed.

YERGER, J., having been counsel for the heirs of Dickson, took no part in the decision of this cause.

NOTE. A petition for re-argument was filed in this case by the plaintiffs in error, but refused by the court.